[**PUBLISH**]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 97-6793

D.C. Docket No.  95-0429-CB-C

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/14/98
THOMAS  K. KAHN
CLERK

HARBERT INTERNATIONAL, INC.,

Plaintiff-Appellant,

versus

FOB JAMES, JAMES FOLSOM, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Alabama

**(October 14, 1998)**

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CARNES, Circuit Judge:

Harbert International, Inc.  appeals from the judgment of the district court in favor of defendants Fob James (current Governor of Alabama), James Folsom (former Governor of Alabama), Jimmy Butts (Director of the Alabama Department of Transportation, which we will refer to as the "Department"), G. Mack Roberts and Perry Hand (former Department Directors), Newal S. Cauthen, G.M. Harper, William Hartzog, and John Jernigan (Department employees), and Alan Cummings (an attorney who performed work for the Department).  This lawsuit  arose out of the

defendants' alleged failure to make payments and perform contractual duties in connection with Harbert's construction of the Cochrane Bridge in Mobile, Alabama.

Harbert's appeal from the district court's entry of judgment in favor of the defendants raises two general issues: (1) whether Eleventh Amendment sovereign immunity bars Harbert's Fifth Amendment Takings Clause claim against the defendants in their official capacities; and (2) whether qualified immunity protects the defendants from Harbert's claims against them in their individual capacities. Answering both questions in the affirmative, we affirm the judgment of the district court.

## I. FACTUAL HISTORY

This appeal arises from two procedural dispositions. Harbert's claims against the defendants in their official capacities were dismissed by the district court upon the defendants' motion to dismiss, while the defendants were granted summary judgment on Harbert's claims against them in their individual capacities . Insofar as Harbert's appeal raises issues pertaining to its official capacity claims, we accept the allegations in Harbert's complaint as true, and construe the facts in the light most favorable to Harbert. See, e.g., Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993). Insofar as Harbert's appeal raises issues pertaining to its individual capacity claims, we view the evidence in the light most favorable to Harbert. See, e.g., Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). Because there is no material variation between the allegations of the complaint and the evidence construed in the light most favorable to Harbert, the following factual account, which reflects the evidence viewed in the light most favorable to Harbert, controls our disposition of the entire appeal.

In 1989, the Department began soliciting bids for the construction of the Cochrane Bridge. Prior to that time, the Department had contracted with a company to construct the bridge, but it terminated that contract because the company performed unsatisfactory work. In conjunction with its solicitation of bids, the Department represented that it would assume the responsibility for defects in the initial contractor's work. It also promised to supply certain equipment and supplies. The Department agreed that the contractor selected to construct the bridge could propose alternative construction methods to those specified in the construction contract. Finally, the Department agreed to compensate the contractor for any necessary work not contemplated by the construction contract. Relying on those representations, Harbert submitted the lowest aggregate bid, and was awarded the contract.

According to Harbert, the Department did not honor its representations, but instead unreasonably refused Harbert's request to utilize alternative time- and expense-saving construction methods and failed to supply Harbert with adequate equipment and supplies. As a result, Harbert experienced delays and increased costs to complete the bridge. By the time Harbert completed the bridge in August of 1991, those increased costs amounted to more than $13 million. Additionally, because Harbert had failed to complete the bridge in a timely manner, the Department withheld $1.3 million in liquidated damages from Harbert.

In January 1992, Harbert submitted a claim to the Department to recover the increased costs it had incurred as a result of the Department's misrepresentations. Defendant Hand referred Harbert's claim to a "Claims Committee" for consideration. Hand also created a "Special Claims Committee" to provide additional review of Harbert's claim. Both committees were supposed to report to Hand by March 1992, but neither did. In June 1992, Harbert appeared before the Claims

Committee to press its claim. The Claims Committee requested additional information from Harbert, which it provided in July 1993.

In August 1993, Harbert asked defendant Cauthen to convene an "Advisory Board" pursuant to the Department's Standard Specification for Highway Construction § 109.10(b). That section provides in relevant part:

> Upon request of the Contractor, the Director may at his discretion refer any question at issue involving the amount or rate of settlement or the liability of the State for any amount, other than as shown by the Engineer's estimates, to an advisory board for its findings and recommendations.

Cauthen asked Harbert to give the Claims Committee more time to resolve the dispute. Harbert agreed to wait until September. In October 1993, Cauthen informed Harbert that another Claims Committee had been formed, and that it needed additional information from Harbert. Harbert provided that information in December 1993.

In May 1994, Harbert again requested that an Advisory Board be convened to consider its claim, and this time the request was granted. The Advisory Board scheduled an organizational meeting for November 1994, and a hearing on Harbert's claim for January 1995. Before the Advisory Board could take any action, however, it was abolished by defendant Roberts on the ground that defendant James had recently been elected Governor of Alabama. Harbert requested that Roberts reconvene the Advisory Board. Roberts, in turn, informed Harbert that he would not accept any recommendation from the Advisory Board which exceeded $600,000.

After assuming office in January 1995, Governor James appointed Butts as Director of the Department. Butts refused to convene a new Advisory Board. In May 1995, Harbert met with Governor James, Butts, and Cauthen to discuss Harbert's claim. At that meeting, the defendants admitted to mishandling Harbert's claim. Butts told Harbert that he would convene an Advisory

4

Board within sixty days of the date he completed his review of Harbert's claim. A short time later, however, Butts informed Harbert that he would not follow any recommendation made by the Advisory Board.

## II. PROCEDURAL HISTORY

After the previously described events, Harbert filed a complaint in federal court asserting claims against the defendants in both their official and individual capacities. The complaint asserted claims under 42 U.S.C. § 1983 alleging that the defendants had violated Harbert's substantive and procedural due process rights as well as its rights under the Fifth Amendment's Takings Clause. In addition to damages, Harbert sought injunctive relief against the defendants in their official capacities to compel the release of the $1.3 million withheld by the defendants as liquidated damages.

The defendants filed a motion to dismiss. They argued that Harbert did not have viable procedural due process claims because (1) Harbert was not deprived of a constitutionally protected property interest, and (2) Harbert had not demonstrated that it could not obtain adequate post-deprivation process to remedy the alleged deprivation. The district court found that both Alabama law and the Department's Standard Specifications for Highway Construction ("Standard Specifications") incorporated into the construction contract conferred upon Harbert a protected property interest. Specifically, the court found that Alabama Code § 41-16-3,[1] which mandates timely payment to a contractor who has executed his duties under a contract with the state, and

---

[1]Alabama Code § 41-16-3 provides in relevant part: "Whenever the state of Alabama is a party to any contract, said contract must be executed by all parties in a timely fashion. When a party to a contract, other than the state, has fully executed his responsibility under the contract and there remains only the payment of funds by the state, said payment must be made in a timely manner."

Standard Specification 109.10(a),[2] which provides that claims for extra compensation must be paid if the claims are found to be just, gave Harbert a protected property interest in being paid for the services it had rendered. The court also found Harbert's allegations established that it had attempted to utilize the state's post-deprivation processes, but that the Department's unreasonable delay in processing Harbert's claim had effectively foreclosed any such process. Accordingly, the court concluded Harbert had alleged viable procedural due process claims.

The district court agreed with the defendants that Harbert's allegations did not state substantive due process claims, and it dismissed those claims against all the defendants. (Harbert does not appeal that dismissal.) Relying on its conclusion that Harbert had a protectible property interest, the court concluded Harbert had alleged a viable Fifth Amendment Takings claim.

The defendants argued that even if Harbert had alleged viable claims against them, they were immune from suit in their official capacity under the Eleventh Amendment, and that they were immune from suit in their individual capacity under the doctrine of qualified immunity. The district court noted that the injunctive relief Harbert sought in its claims against the defendants in their official capacities fell into two categories: (1) a request that the defendants provide Harbert with certain administrative procedures; and (2) a request that the defendants release funds the Department

---

[2]Standard Specification 109.10(a) provides in relevant part:

In any case where the Contractor deems that extra compensation is due him for work or materials not clearly covered in his contract and not ordered by the Engineer as extra work as defined herein, the Contractor shall notify the Engineer in writing, with copy to the Director, of his intention to make claim for such extra compensation before he begins the work on which he bases his claim. . . . The validity of the claim must be passed upon by the Engineer. In case the claim is found to be just, it shall be allowed and paid.

6

had withheld from Harbert.  The court reasoned that because granting either type of relief would have the effect of compelling or restraining state action, Harbert's claims against the defendants in their official capacity were really claims against the State of Alabama.  Therefore, the court concluded, Harbert's claims against the defendants in their official capacity were barred by the Eleventh Amendment.  Accordingly, the court dismissed those claims.

Turning to the issue of qualified immunity, the court found that the record  did  not establish whether the defendants' allegedly unconstitutional acts fell within the scope of their discretionary authority.  As a result, the court believed and stated discovery would be necessary to enable it to resolve that issue.  Accordingly, the court declined to dismiss Harbert's individual capacity claims on the basis of qualified immunity.

In October 1996, the defendants moved for summary judgment, re-asserting that qualified immunity protected them from Harbert's individual capacity claims.  In response, Harbert filed a motion for discovery pursuant to Federal Rule of Civil Procedure 56(f), asserting that it needed discovery to demonstrate the existence of a genuine issue of material fact about whether the defendants' allegedly unconstitutional acts were within the scope of their discretionary authority. The district court found  Harbert's discovery  request was so broad and far-reaching that granting it would frustrate the purposes of the defense of qualified immunity.  The court also found discovery would not show that the defendants had exceeded the scope of their discretionary authority. Accordingly, it denied Harbert's Rule 56(f) motion.

In September 1997, the district court granted the defendants' motion for summary judgment on Harbert's procedural due process and takings claims against the defendants in their individual capacities.  The  court  concluded  the  defendants  had  demonstrated  that  their  allegedly

unconstitutional conduct was done within the scope of their discretionary authority. The court also concluded that clearly established law did not compel the conclusion that the defendants' alleged conduct violated Harbert's procedural due process rights or constituted an impermissible taking of property. Accordingly, the court held that the doctrine of qualified immunity barred Harbert's claims against the defendants in their individual capacities.

Harbert appeals from the district court's (1) dismissal of its Fifth Amendment Takings Clause claim against the defendants in their official capacities on the basis of Eleventh Amendment sovereign immunity; (2) denial of its Rule 56(f) motion for discovery; and (3) grant of summary judgment to the defendants on its procedural due process and Fifth Amendment Takings Clause claims against the defendants in their individual capacities on the basis of qualified immunity.

### III.  STANDARDS OF REVIEW

We review the district court's dismissal of Harbert's claims against the defendants in their official capacity de novo. See, e.g., Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P., 144 F.3d 732, 736 (11th Cir. 1998). We review the district court's order denying Harbert's Rule 56(f) motion for discovery for an abuse of discretion, and "will not overturn such an order unless it is shown that the district court's ruling resulted in substantial harm to the appellant's case." Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 493 (11th Cir. 1997) (footnote omitted).

Finally, we review the district court's grant of summary judgment de novo, with all facts and reasonable inferences therefrom reviewed in the light most favorable to the nonmoving party. See, e.g., Hale, 50 F.3d at 1581. Summary judgment is appropriate when the record discloses no genuine

8

issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

A.      WHETHER HARBERT'S FIFTH AMENDMENT TAKINGS CLAUSE CLAIM AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES IS BARRED BY ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

The district court held all of Harbert's claims against the defendants in their official capacities were barred by Eleventh Amendment sovereign immunity.  Arguing the court was wrong, Harbert contends that Eleventh Amendment sovereign immunity does not bar a Fifth Amendment Takings claim if the State fails to provide a means of redress for such a claim in its own courts. We need not decide whether that contention is correct, because Alabama state courts do provide Harbert with a means of redress for its claim.  Therefore, we conclude that Harbert's  Fifth Amendment Takings Clause claim is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Although not readily apparent from the amendment's text, it has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state.  See Hans v. Louisiana, 134 U.S. 1, 18-19, 10 S. Ct. 504, 508 (1890).  The state need not be formally named as a defendant for the amendment to apply; state officials sued in their

9

official capacity are also protected by the amendment. See, e.g., Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105-06 (1985).[3]

While the amendment's text suggests its prohibition is jurisdictional in nature, the Supreme Court has held that it is not; instead, the amendment creates a sovereign immunity which "the States enjoy save where there has been a surrender of this immunity in the plan of the convention." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, ___, 117 S. Ct. 2028, 2033 (1997) (internal quotation and citation omitted). The Supreme Court has recognized three situations in which there is a "surrender" of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 3145 (1985); (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, see Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55-73, 116 S. Ct. 1114, 1123-32 (1996); and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law, see id. at 73, 116 S. Ct. at 1132; Ex parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 452 (1908).

The district court correctly held that Harbert's claims against the defendants in their official capacities were, in effect, claims against the State of Alabama and, consequently, that the defense

---

[3]When a state official is made a defendant in a suit, whether it is nominally brought against him in his official or individual capacity, a court must determine the real, substantial party in interest. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S. Ct. 900, 908 (1984). If it is the State, the official may assert the defense of Eleventh Amendment sovereign immunity. See id. at 101-02, 104 S. Ct. at 908-09. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Id. at 101 n.11, 104 S. Ct. at 908 n.11 (internal quotation and citation omitted).

of Eleventh Amendment sovereign immunity was available.  Finding that Harbert's claims against the defendants in their official capacities did not fall within any of the three exceptions discussed above, the court held that the Eleventh Amendment barred those claims.

On appeal, Harbert does not argue that the district court erred in holding the suit was one against the State or that none of the three established exceptions was applicable.  Instead, Harbert urges us to find what amounts to a fourth exception to the Eleventh Amendment's prohibition on suits against a state.  Harbert asks us to hold that when a state refuses to submit to suit in its own courts for claims brought under a self-executing constitutional provision such as the Takings Clause of the Fifth Amendment, the Eleventh Amendment will not bar such a suit from federal court.

Harbert's argument proceeds as follows.  The Fifth Amendment's Takings Clause provides an absolute guarantee of just compensation when private property is taken for public use.[4]  The defendants, acting in their official capacities,  took Harbert's property for public use.   Harbert, therefore, has an absolute right to just compensation.  Harbert is unable to seek that remedy in state court because Article 1, § 14, of the Alabama Constitution prohibits suits for takings claims, such as this one, that do not involve real property.  The Eleventh Amendment's prohibition on suits against a state in federal court is not absolute.  Therefore, these circumstances must present a fourth situation in which a "surrender" of Eleventh Amendment sovereign immunity was "within the plan of the convention."

If  Harbert's  state  law premise were correct,  in  the  view of a plurality of the Supreme Court, "a substantial constitutional question would be presented." Florida Dep't of State v. Treasure

---

[4]The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation."  U.S. Const. Amend. V.

11

Salvors, Inc., 458 U.S. 670, 697, 102 S. Ct. 3304, 3321 (1982) (plurality opinion). Without an avenue of redress for a takings claim, that plurality said, "all property rights would exist only at the whim of the sovereign." Id. However, that situation is not presented in this case, because Alabama law does provide Harbert with a means of redress if its claim of entitlement is a valid one, as Harbert contends it is.

In Alabama Highway Dept. v. Milton Constr. Co., Inc., 586 So. 2d 872 (Ala. 1991), the Alabama Supreme Court discussed Alabama's immunity from suit in its own courts under factual circumstances similar to those presented here. The plaintiff, Milton Construction Company ("Milton"), had contracted with the Department of Transportation to perform work on the Alabama portion of an interstate highway. Milton had completed its work under the contract, but the Department had refused to pay Milton all the money it was due. Responding to the Department's assertion that Article I, § 14 of the Alabama Constitution barred Milton from suing in Alabama courts to force payment of the money due, the Alabama Supreme Court held:

> It is true that § 14 of the Constitution prevents a suit against the state as well as suits against its agencies. However, this Court has also recognized that there are certain established exceptions to the protection afforded the state or its agencies by sovereign immunity. Among those recognized exceptions are actions brought to force state employees or agencies to perform their legal duties. . . . Once [the Department] has legally contracted under state law for goods or services and accepts such goods or services, [it] also becomes legally obligated to pay for the goods or services accepted in accordance with the terms of the contract. It follows that this obligation is not subject to the doctrine of sovereign immunity and is enforceable in the courts.

Id. at 875 (internal citation omitted). The holding in Dunn Construction Company, Inc. v. State Board of Adjustment, 175 So. 383 (Ala. 1937), is similarly instructive. In that case, the Alabama Supreme Court held:

12

> As for claims arising from contracts with the state, including contracts through agencies authorized to contract on behalf of the state, it is to be observed that all persons dealing with the state are charged with knowledge that no one has authority to subject the state to suit. Not that the holders of state obligations are without remedy. When an obligation of the state to pay money is created by law, or by contract duly authorized, somewhere there is a duty imposed on a public officer or officers to make payment from the funds appropriated therefor. Performance of such official duty . . . may be compelled by mandamus.

Id. at 386.

Here, Harbert alleges that its contract with the Department entitles it to compensation for work which was necessary to complete the Cochrane Bridge but which was not covered in the contract. Harbert further alleges that it performed such "extra" work, but that the Department has refused to compensate it for that work by arbitrarily refusing to finish the administrative procedures necessary to process Harbert's claim. If Harbert can prove those allegations, Milton and Dunn establish that Harbert can bring an action in Alabama state court to force the defendants to complete the administrative procedures necessary to process Harbert's claim, or to release the funds Harbert is due under the contract, or both. Because Alabama state courts provide Harbert with an avenue of relief for its takings claim, we need not decide whether there is a fourth exception to the Eleventh Amendment's bar against suits against a state in federal court. Accordingly, we conclude that Harbert's Fifth Amendment Takings Clause claim against the defendants in their official capacities is barred by Eleventh Amendment sovereign immunity.[5]

---

[5]Defendant Cummings argues that we should affirm the dismissal of Harbert's Fifth Amendment Takings Clause claim because even if Harbert has a property interest protected by the Fourteenth Amendment's Due Process Clause, he has not been deprived of an interest which is protected by the Fifth Amendment's Takings Clause. See Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1075 (11th Cir. 1996) ("'Property' as used in the Just Compensation Clause is defined much more narrowly than in the due process clauses."), cert. denied, ___ U.S. ___, 118 S. Ct. 441. (1997). Given our affirmance of the dismissal on other grounds, we need not reach that issue.

13

2.      WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING

HARBERT'S RULE 56(f) MOTION FOR DISCOVERY

When it initially denied the defendants' motion to dismiss Harbert's individual capacity claims, the district court expressed its belief that discovery was needed to determine whether the defendants had acted within the scope of their discretionary authority, a prerequisite to qualified immunity. In its subsequent order on Harbert's Rule 56(f) motion, the court acknowledged that Harbert could "understandably rel[y]" on the court's earlier order as support for its motion. Nevertheless, the court denied Harbert's Rule 56(f) motion, reasoning that the breadth of Harbert's discovery request, the state of the record, and policy concerns implicated by the defendants' assertion of qualified immunity, all militated against permitting discovery. In other words, the court reconsidered and changed its mind.

"District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential." Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996), cert. denied, ___ U.S. ___, 117 S. Ct. 2422 (1997). A Rule 56(f) motion must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment. See Fed. R. Civ. P. 56(f); Walters v. City of Ocean Springs, 626 F.2d 1317, 1321 (5th Cir. Unit A 1980). Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party.

In qualified immunity cases, the Rule 56(f) balancing is done with a thumb on the side of the scale weighing against discovery. Qualified immunity provides "'an entitlement not to stand trial

14

or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question.'" Behrens v. Pelletier, 516 U.S. 299, 306, 116 S. Ct. 834, 838-39 (1996) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)). For that reason, once a defendant raises the defense, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Crawford-El v. Britton, ___ U.S. ___, ___, 118 S. Ct. 1584, 1596 (1998).

The district court's order on Harbert's Rule 56(f) motion indicates that it carefully balanced all of the interests involved in light of the overarching policy considerations implicated by the defendants' assertion of qualified immunity. The district court explained that at the time it took Harbert's Rule 56(f) motion under advisement, it had "considerably more information" before it than at the time it issued the order denying the defendants' motion to dismiss. Specifically, the information before the court when it ruled on the Rule 56(f) motion included: (1) affidavits from the defendants setting forth what they claimed to be the authority for their alleged actions; (2) an affidavit from Harbert's attorney setting forth what he believed discovery would reveal; and (3) a pleading from Harbert which purported to identify the clearly established law the defendants had violated.

Based upon all of that information, the district court found it unlikely that further discovery would establish either that the defendants acted outside the scope of their discretionary authority or that they had violated clearly established law. As to the burden Harbert's requested discovery would place on the defendants, the court observed that Harbert wanted discovery "on no fewer than nine issues [which] appear to encompass all information relevant to the disposition of this case on

15

its merits."[6]  In short, Harbert wanted a lot, which would take much time and effort to provide. Accordingly, the court denied Harbert's motion.

Harbert argues that under the authority of Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988), it was entitled to conduct some discovery before responding to the defendants' motion for summary judgment.  Dollar is  a case in which we held that the defendant was protected from suit by the doctrine of qualified immunity. In doing so, we stated in dicta:  "We point out to the district courts and the practicing bar the importance of pursuing discovery to a reasonable extent so as to permit appropriate factual showings.  Anything less may result in grants of summary judgment solely because of inadequate discovery."  Id. at 1566 n.8.  However, that dicta must be read in light of subsequent opinions, including the Supreme Court's teaching in Crawford-El.  In this case, the district court did not abuse its discretion by denying Harbert's Rule 56(f) motion.

3.       WHETHER THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

BASED ON THE DEFENSE OF QUALIFIED IMMUNITY

So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him.  See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  As noted earlier, qualified immunity is intended to protect  the government official not only from civil liability, but also from suit and its concomitant burdens.  See Behrens, 516 U.S. at 306, 116 S. Ct. at 838-39.  "The defense of qualified

---

[6]Harbert asserts that its discovery request was narrowly tailored to demonstrate that each defendant committed acts that exceeded the scope of their discretionary authority and violated clearly established law.  Our review of Harbert's attorney's affidavit, submitted in support of its Rule 56(f) motion, reveals that its request was not  narrowly tailored.  Harbert sought discovery on a wide variety of issues, some of which had little or nothing to do with whether a particular defendant had the authority to perform a certain act.

immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).

### 1. The Two-Part Qualified Immunity Analysis

We apply a two-part analysis to a government official's assertion of qualified immunity. First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. See, e.g., Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997). Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law. See id.

Harbert contends that the district court failed to adhere to the two-part analysis discussed above. Because we review the district court's grant of summary judgment de novo, any such error will be of no moment here. Nevertheless, we take this opportunity to dispel any confusion as to the proper application of the two-part qualified immunity analysis.

In its summary judgment order, the district court suggested that a government official might be entitled to the protection of qualified immunity so long as he did not violate clearly established law, even if the official failed to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. The district court stated: "The Court believes that the plaintiff has erred in its contention that the Court need not – or may not – proceed to the 'clearly established law' prong unless the defendants have satisfied their burden with respect to the 'discretionary authority' prong."

17

The district court was mistaken. To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. See Evans, 117 F.3d at 1320. If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law. See id. The doctrine of qualified immunity was developed to defray the social costs of litigation against government officials. See Harlow, 457 U.S. at 814, 102 S. Ct. at 2736 ("These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."). When a government official goes completely outside the scope of his discretionary authority, he ceases to act as a government official and instead acts on his own behalf. Once a government official acts entirely on his own behalf, the policies underlying the doctrine of qualified immunity no longer support its application. For that reason, if a government official is acting wholly outside the scope of his discretionary authority, he is not entitled to qualified immunity regardless of whether the law in a given area was clearly established. See Lenz v. Winburn, 51 F.3d 1540, 1547 (11th Cir. 1995); see also In re Allen, 106 F.3d 582, 593 (4th Cir. 1997 ("A government official . . . cannot claim qualified immunity when he acts totally beyond the scope of his authority."), cert. denied, ___ U.S. ___, 118 S. Ct. 689 (1998); Gray v. Bell, 712 F.2d 490, 502 n.36 (D.C. Cir. 1983) ("It is clear that the scope of authority requirement is a prerequisite to any application of official immunity[.]").

Despite its earlier statements, the district court went on to engage in the proper two-part analysis. The court found that there was no genuine issue of material fact as to either part of that analysis and, therefore, it granted summary judgment to the defendants on Harbert's individual-capacity claims on the basis of qualified immunity. Harbert contends both that the defendants failed

18

to establish they were acting within the scope of their discretionary authority when the allegedly unconstitutional conduct occurred, and that Harbert established the defendants' conduct violated clearly established law. We review the district court's rejection of those contentions de novo. See, e.g., Rowe v. Schreiber, 139 F.3d 1381, 1383 (11th Cir. 1998).

> 2. <u>Whether the Defendants Established that they were Acting Within the Scope of their Discretionary Authority</u>

To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. See, e.g., Lenz, 51 at 1545. "A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." Espanola Way Corp. v. Meyerson, 690 F.2d 827, 830 (11th Cir. 1982).

In Barker v. Norman, 651 F.2d 1107, 1124-25 (5th Cir. Unit A July 1981), the court talked about the defendant's burden in this regard:

> To establish [that a defendant is acting within the scope of his discretionary authority], there must be more than a bald assertion by the defendant that the complained-of actions were undertaken pursuant to the performance of his duties and within the scope of his discretionary authority; there must be a showing by competent summary judgment materials of objective circumstances that would compel that conclusion. . . . Exactly what will suffice to establish such objective circumstances will . . . vary in proportion to the degree of discretion inherent in the defendant's office. Such objective circumstances necessarily must encompass the factual context within which the complained-of conduct took place. But also appropriate is a showing by the defendant of facts relating to the scope of his official duties -- e.g., a showing of the circumstances through which he initially came to believe that his lawful authority included within its scope actions of the type that are complained of by the plaintiff.

See also Rich v. Dollar, 841 F.2d at 1564 (quoting Barker).

19

To determine whether the defendant has discharged his burden, it is critical to define properly the inquiry. The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an "untenable" tautology. See Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992); Shechter v. Comptroller of New York, 79 F.3d 265, 269 (2d Cir. 1996). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" In re Allen, 106 F.3d at 594 (quoting Doe v. McMillan, 412 U.S. 306, 319-20, 93 S. Ct. 2018, 2028 (1973)).

Examples from our previous decisions are helpful to an understanding of the proper application of these principles. In Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994), the plaintiff was an inmate who alleged that the defendants, United States Marshals, transported him to jails where they knew unconstitutional conditions existed and released him into state custody in violation of an agreement governing federal detainees. To determine whether the defendants had acted within the scope of their discretionary authority, we did not ask whether the defendants could place the plaintiff into unconstitutional conditions or improperly transfer him; instead, we asked whether their duties included transporting and delivering prisoners. See id. at 1566.

In Sims, the plaintiff alleged that the defendants unlawfully suspended him from his state government job for exercising his First Amendment rights. See 972 F.2d at 1236. Addressing the discretionary authority issue, we did not ask whether it was within the defendants' authority to suspend an employee for an improper reason; instead, we asked whether their discretionary duties included the administration of discipline. See id. Finally, in Rich, the plaintiff alleged that the

20

defendant, an investigator for the state attorney's office, unlawfully initiated a criminal investigation against him by filing an affidavit of probable cause when none existed. See 841 F.2d at 1561. We concluded that the defendant had acted within his discretionary authority not because that authority included filing unfounded probable cause affidavits, but because his duties included writing and submitting probable cause affidavits. See id. at 1564.

Here, the constitutional injury Harbert complains of concerns the Department's alleged refusal to process Harbert's claim for extra compensation and its withholding of liquidated damages from Harbert, thereby depriving Harbert without due process or just compensation of a property interest in timely payment for work performed. While Harbert alleges the defendants engaged in a myriad of unlawful and improper conduct, only the conduct that caused Harbert's alleged constitutional injury is relevant to the discretionary authority inquiry. That conduct consists of the defendants' allegedly improper handling of Harbert's claim for extra compensation and their decision to withhold damages from Harbert under a liquidated damages clause in the construction contract. The determinative question is whether the defendants had the authority to receive and process Harbert's claims for compensation, and whether they had the authority to decide whether to withhold damages from Harbert under a liquidated damages clause of the construction contract.

With the inquiry properly defined, we see the defendants have met their burden of demonstrating that their conduct was undertaken pursuant to their duties and that they were acting within the scope of their authority when the allegedly unconstitutional conduct occurred. Standard Specification 109.10, which was incorporated into the construction contract, specifically authorizes Department officials to hear and assess claims for extra compensation. Standard Specification 108.10, which was incorporated into the construction contract, specifically authorizes the

21

Department to decide whether to withhold liquidated damages from Harbert for failing to complete the bridge as scheduled.

Defendants Butts, Roberts, and Hand, each succeeded each other as Director of the Department. Alabama law gives Department Directors broad discretionary authority over all of the Department's operations. Section 23-1-21 of the Alabama Code states: "All the powers, authority and duties vested in the highway department shall be exercised by the Highway Director." Section 23-1-21.2(5) gives the Director the authority to "[a]dminister any state funds authorized from time to time by the legislature for the purpose of public transportation." The Director has the authority to "determine the need for new or additional work not contemplated or included in the original construction contract." Ala. Code § 23-1-60(2). Finally, the Department, and therefore, the Director, is authorized to make rules and regulations to facilitate its activities. Ala. Code § 23-1-59(d). Those provisions, together with Standard Specifications 108.10 and 109.10, authorized defendants Butts, Roberts, and Hand, to hear and assess Harbert's claims for extra compensation and to decide whether to withhold liquidated damages from Harbert.

Under Article V, § 113, of the Alabama Constitution, the Governor of Alabama is vested with "[t]he supreme executive power" of the State. The Governor is specifically authorized to appoint the Department Director who "shall hold office at the pleasure of the Governor." Ala. Code § 23-1-21. Implicit in those broad grants of authority is the authority to maintain a dialogue with the Director and his subordinates about all of the Department's affairs and to supervise them in the carrying out of their duties. Therefore, defendants James and Folsom, the Governor and former Governor of Alabama, were acting within the scope of their authority in any discussions they had

22

with Department officials about Harbert's claims for extra compensation and in any directions they gave those officials about such matters.

Defendant Cummings represented the Department as a special attorney general with regard to Harbert's claims for extra compensation. Section 23-1-30(1) of the Alabama Code states that special attorneys general are "[t]o advise the [Department] Director and other personnel of [the Department] on the legal aspects of all highway department business." None of Harbert's allegations, taken as true for present purposes, establishes that Cummings acted outside the scope of the authority granted him.

Each of the remaining defendants held administrative positions within the Department. Each has submitted an affidavit setting forth the duties of his position. Those affidavits establish that any allegedly unconstitutional conduct by defendants Cauthen, Harper, Hartzog, and Jernigan occurred while they were acting within the scope of their discretionary authority. Accordingly, we conclude that all of the defendants have established beyond any genuine issue of material fact that they were acting within the scope of their discretionary authority when the allegedly unconstitutional conduct occurred.

3.      Whether Harbert Established that the Defendants' Actions Violated Clearly Established Law

Because the defendants have established that they were acting within the scope of their discretionary authority when the allegedly unconstitutional conduct occurred, the burden shifts to Harbert to establish that the defendants' conduct violated clearly established law. See, e.g., Rich, 841 F.2d at 1564. In Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149-50 (11th Cir. 1994) (en

banc), we discussed what is required to demonstrate that the defendants' conduct violated clearly established law:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases. . . . The line is not to be found in abstractions . . . but in studying how these abstractions have been applied in concrete circumstances.

(internal quotations and citations omitted). Because "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances," id. at 1150 (emphasis in the original), only plainly incompetent or lawless government officials will not be protected by qualified immunity.

In the face of the applicable standard, Harbert argues the law clearly established that a constitutionally protected property interest in receiving timely payment for work performed existed, and that one may not be deprived of such a property interest without due process of law. Assuming that is correct, Harbert's argument still fails to carry the day. Harbert has set forth a general principle of law, but we have held time and again that clearly established general principles of law will seldom if ever suffice to strip a defendant of qualified immunity. See, e.g., Dolihite v. Maughon By and Through Videon, 74 F.3d 1027, 1040-41 (11th Cir.) ("A plaintiff must establish more than broad legal truisms; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful."), cert. denied, ___ U.S. ___, 117 S. Ct. 185 (1996); D'Aguanno v. Gallagher, 50 F.3d 877, 880 (11th Cir. 1995) ("To

24

overcome the qualified immunity defense, citing precedent which establishes a general right will not do."); Lassiter, 28 F.3d at 1150.

In order to defeat the qualified immunity defense, it was incumbent upon Harbert to demonstrate the law was clearly established that what these defendants did, in this case, violated federal law. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (emphasis added). Because Harbert has pointed to no factually analogous case which establishes that the defendants' conduct was a deprivation of property without due process of law, it has failed to discharge its burden. See D'Aguanno, 50 F.3d at 880 ("Because those cases plaintiffs cite do not dictate and compel the conclusion that defendants' acts violated plaintiffs' rights to peaceable assembly and freedom of association, and because plaintiffs have failed to cite other authority which dictates that conclusion, plaintiffs have failed to show defendants violated clearly established federal law of which a reasonable officer would have known.").

Harbert argues that requiring it to produce a factually analogous case to demonstrate that the defendants' conduct was unconstitutional ignores the Supreme Court's decision in United States v. Lanier, 520 U.S. 259, 117 S. Ct. 1219 (1997). We rejected that argument in Jenkins by Hall v. Talladega City Board of Education, 115 F.3d 821 (11th Cir.), cert. denied, ___ U.S. ___, 118 S. Ct. 412 (1997), where we explained:

> We do not believe [that requiring the plaintiff to use pre-existing factually analogous decisions to demonstrate that the law is clearly established is] contrary to the spirit of [Lanier]; indeed, although general principles of law can provide fair warning, they do not necessarily provide such warning unless the constitutional rule at issue may be applied "with obvious clarity."

25

Id. at 825-26 n.3. As was the case in Jenkins, this is not a situation where a clearly established legal principle applies with such "obvious clarity" that a reasonable government official in the defendants' position would have known that their actions were unlawful.

The defendants did not simply refuse to pay Harbert for its work on the bridge. They received Harbert's claim and subjected it to various claims review processes. Harbert alleges that those processes have neither been conducted properly nor completed in a timely manner, but that is not the issue before us. The issue is whether, in light of the general legal principle that it is unlawful to deprive an entity of a property interest without due process of law, it should have been obvious to the defendants that their handling of Harbert's claim violated Harbert's due process rights – obvious to the extent that no reasonable official in their position could have thought otherwise. We cannot say that it should have been. Therefore, Harbert has failed to meet its burden of demonstrating that the defendants' conduct violated clearly established law.

Harbert's final argument is that under Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984), the defendants have forfeited their qualified immunity because their conduct allegedly violated clearly established state laws and administrative rules. In Davis, the plaintiff argued that defendants who fail to comply with a clear state regulation forfeit their qualified immunity. The Court held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Id. at 194, 104 S. Ct. at 3019 (footnote omitted). In reaching that holding, however, the Court noted that the regulation allegedly violated by the defendants was not one which "is itself actionable under § 1983 or bears upon the claim of constitutional right that [plaintiff] asserts under § 1983." Id. at 193, 104 S. Ct. at 3018. The Court went on to state: "Neither federal nor state officials lose their immunity

26

by violating the clear command of a statute or regulation – of federal or of state law – <u>unless</u> that statute or regulation provides the basis for the cause of action sued upon." <u>Id.</u> at 194 n.12, 104 S. Ct. at 3019 n.12 (emphasis added).

At least two courts have interpreted <u>Davis</u> to mean that when faced with a procedural due process claim, a defendant who violates a clearly established state statute or regulation creating a property interest cannot claim to be protected by qualified immunity. <u>See</u> <u>Carlo v. City of Chino</u>, 105 F.3d 493, 501-02 (9th Cir. 1997), <u>cert. denied</u>, ___ U.S. ___, 118 S. Ct. 1336 (1998); <u>Spruytte v. Walters</u>, 753 F.2d 498, 511 (6th Cir. 1985). We do not read <u>Davis</u> as creating such a per se rule. As the Supreme Court explained in <u>Elder v. Holloway</u>, 510 U.S. 510, 515, 114 S. Ct. 1019, 1023 (1994), <u>Davis</u> merely held that "qualified immunity [is] defeated [only] where a defendant violates . . . [a] clearly established . . . federal right on which the claim for relief is based[.]" While state law may have created Harbert's constitutionally protected property interest, the federal right upon which the claim for relief is based is the right to due process. The holding in <u>Davis</u> did not obviate Harbert's burden of demonstrating it was clearly established that the defendants' conduct <u>in this case</u> violated that federal right. <u>See</u> <u>Anderson</u>, 483 U.S. at 640, 107 S. Ct. at 3039. Because Harbert did not discharge that burden, the defendants are entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

27