[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14493
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-01307-CV-J-NE

LESTER CARPENTER REED,

Plaintiff-Appellant,

versus

RICHARD ALLEN,
Commissioner, Alabama Department of
Corrections,
BILLY MITCHEM,
Warden, Limestone Correctional
Facility,
DAVID TULLY,
Supervisor,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 18, 2010)

Before BLACK, HULL and MARTIN, Circuit Judges.

PER CURIAM:

In this 42 U.S.C. § 1983 action, Plaintiff Lester Carpenter Reed, an Alabama state prisoner, appeals the district court's grant of summary judgment in favor of the Defendants – the Commissioner of the Alabama Department of Corrections ("ADOC"), the Warden of Limestone Correctional Facility in which Reed is incarcerated, and Reed's supervisor at Limestone – based on qualified immunity. Reed's complaint alleged that the Defendants' policies requiring HIV-positive inmates to wear white wristbands at all times violate his Fourteenth Amendment privacy rights because they result in the non-consensual disclosure of his HIV-positive status to other inmates. On appeal, Reed contends the Defendants are not entitled to qualified immunity because their penological interests in establishing the wristband policy do not outweigh his privacy rights. Upon review, we affirm.[1]

Reed is infected with Human Immunodeficiency Virus and this has caused him to be segregated in various ways from the general prison population. Reed tested positive for HIV in 1987 while incarcerated at another ADOC facility. Reed

_____

[1]"We review de novo a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003). We construe the facts in the light most favorable to the non-moving party. Id.

later was transferred to Limestone, where he and other HIV-positive inmates were completely segregated from the general prison population. HIV-positive inmates were then, and are now, housed in two dormitories specifically set aside for HIV-positive inmates – the B- and C-Dorms on the A-side of Limestone. In 2004, ADOC altered its full segregation policy and allowed partial integration of HIV-positive inmates into most educational and vocational programs.

In 2008, ADOC expanded its policy to include "full" integration of HIV-positive inmates into the general prison population, including visitation, educational, religious, and social programs. ADOC's 2008 full-integration policy also included a wristband requirement at Limestone. All Limestone inmates are now required to wear color-coded wristbands containing their photograph, name, prisoner number, and the date the band was issued. A white wristband, such as Reed's, signifies residence in the A-side, Dorms B & C. A-side D Dorm uses red and purple wristbands. B-side SAP Dorms use green wristbands. B- and C-side Honor Dorms use yellow and orange wristbands.

The Defendants aver the purpose of these wristband requirements is to facilitate the safe and efficient functioning of the Limestone facility. Color-coded wristbands on all inmates permit prison officials to quickly visually identify inmates based on residence assignment, which serves several purposes. First,

3

inmates generally are not permitted to visit dorms in which they are not housed, because this often leads to illicit activities such as theft, sexual relations, gambling, and fighting.  Second, color-coding allows prison officials to readily identify inmates and their residence assignments in case of fire, severe weather, or other emergency.  It is undisputed, however, that the only inmates wearing white armbands are, in fact, HIV-positive.[2]

Reed filed this suit pursuant to § 1983, claiming violation of his Fourteenth Amendment privacy rights.  Reed claims Limestone's color-coded wristband policy effectively signified his HIV-positive status to other inmates and thereby violated his privacy rights.  Reed claims there is no valid penological justification for these wristbands and that Limestone's penological interests could be protected by other less-intrusive means.  He alleges the prison population is aware that a white armband functionally signifies HIV-positive status.  Reed allegedly suffers from depression, obsessive-compulsive disorder, and anxiety attacks as a result of the wristband, and he claims the constant wearing of the band causes him severe physical pain and a swollen wrist.  Reed sued the Defendants in their individual

---

[2]Reed also complains about Limestone's daily newsletter to inmates, which lists daily healthcare appointments.  HIV-positive inmates are grouped under the "Special Unit" list on the daily healthcare appointment section.  The list does not, however, explicitly identify these inmates as being HIV-positive, and Reed does not explain whether inmates with medical conditions other than HIV also may be listed as "Special Unit" inmates.

and official capacities.  Reed seeks damages and injunctive relief.

The Defendants moved for summary judgment on the basis of qualified immunity, which the district court granted.  The district court reasoned Reed had not shown the violation of a clearly-established constitutional right and thus could not overcome the Defendants' qualified immunity for the claims asserted against them individually.[3]  Reed appealed.

Upon review, we agree the Defendants are entitled to qualified immunity because Reed has not shown the violation of a clearly-established constitutional right.  Qualified immunity protects government officials performing discretionary functions not just from liability, but from suit, unless the officials' conduct violated "clearly established" federal statutory or constitutional rights of which a reasonable person would have known.  GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998).  "If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official

_____

[3]The district court entered final judgment for the Defendants on all of Reed's claims, effectively disposing of his official capacity claims even without explicitly addressing them. Reed's official capacity claims are not before us in this appeal for two reasons.  First, Reed did not brief them in his appellate brief, and issues not raised in the briefs are deemed waived. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).  Second, even if they were properly presented, we would be barred from considering the official capacity claims. Official capacity claims against state officials are, in effect, claims against the State.  Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277-78 (11th Cir. 1998).  The Eleventh Amendment typically bars suit against a State in federal court unless the State has consented to the filing of such suit, which Alabama has not done here.  See id.

is not entitled to qualified immunity." Skop v. City of Atlanta, 485 F.3d 1130, 1136-37 (11th Cir. 2007). To overcome qualified immunity, the plaintiff must show both that: (1) the defendant violated a constitutional right, and (2) this right was clearly established. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). The Court is permitted to exercise its discretion in determining which of the two prongs of this qualified immunity test is considered first. Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).

"For a right to be 'clearly established,' previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." GJR Invs., Inc., 132 F.3d at 1366. The salient question is whether the state of the law at the time of the Defendants' alleged actions gave fair warning that those actions were unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002).

In Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991), a panel of this Court considered a Fourteenth Amendment privacy-rights challenge to the ADOC's then-current policy of uniformly segregating HIV-positive inmates from the rest of the general prison population. The Harris Court applied the Supreme Court's four-part balancing test to weigh a prisoner's constitutional rights against the State's legitimate penological interests in prison policies, identifying as relevant factors:

6

"(a) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an 'exaggerated response' to prison concerns." Id. at 1516 (quoting Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 2261-63 (1987)). The Harris Court "balance[d] the limited personal privacy interests (assuming such exist) of the seropositive inmates, with those legitimate interests that underlie the [ADOC]'s decision to segregate such inmates from the general prison population." Id. at 1515.

The Harris Court concluded that an inmate's privacy right in his HIV-positive status may lawfully be "subject to substantial restrictions and limitations" when balanced against legitimate penological interests. Id. at 1514-15. The Harris Court determined that a "blanket policy" of isolating HIV-positive inmates, with its resultant non-consensual disclosure of HIV-status, was a reasonable infringement on the privacy rights of HIV-positive inmates when viewed in light of the prison interests generating such a policy. Id. at 1512, 1521.

Reed argues that Harris established a privacy right in prison inmates' HIV-

7

positive status and that Limestone's wristband policy violated this right. Harris did not speak so broadly. The Harris Court functionally assumed a privacy right existed in HIV-positive status and determined that the legitimate penological interests supporting full segregation of HIV-positive inmates outweighed the inmates' privacy rights, whatever they were. So even if we were to assume, as did the Harris Court, that Reed has a protected privacy right in his HIV-positive status, our inquiry still is whether Limestone's wristband policy satisfies a legitimate penological interest that outweighs Reed's privacy right. And beyond that, the qualified immunity test also requires Reed to show that the privacy right violated was clearly established to a reasonable government actor at the time of violation.

We need not consider the constitutional issue. Pearson, __ U.S. __, 129 S. Ct. at 818. Even assuming Reed's complaint states a constitutional violation, the Defendants are entitled to qualified immunity because the right Reed asserts was not clearly established. The state of law at the time the Defendants implemented the wristband policy was that, under Harris, complete segregation of HIV-positive prisoners was not a constitutional violation. The current policy at Limestone is less restrictive because it disposes of segregation, except for residence, and integrates HIV-positive inmates with the rest of the inmates. It was not then "clearly established" to prison officials that requiring color-coded wristbands

8

violated Reed's constitutional privacy right when full segregation did not. In light of <u>Harris</u>, Reed has not shown that his privacy right was "clearly established." <u>See GJR Invs., Inc.</u>, 132 F.3d at 1366.

The district court accordingly did not err in granting summary judgment for the Defendants.

**AFFIRMED.**