MURDOCK, Justice
(concurring in the result).
Although the parking of a vehicle in the median of a roadway normally is not permitted under the law of Alabama, § 32-5A-7, Ala.Code 1975, describes certain circumstances under which a police vehicle is permitted to do so. I am inclined to disagree with the conclusion of the main opinion that the single “yelp” of his siren qualified Jerome Coleman for the exemption from the general prohibition of parking in a median provided to a police vehicle by § 32-5A-7 when, among other things, that vehicle “is making use of an audible siren.” (Emphasis added.)
The fact that Coleman’s conduct was not specifically exempted by § 32-5A-7 from constituting a violation of this State’s traffic laws, however, does not lead me to conclude that he is not protected by the doctrine of State-agent immunity. The fact remains that Coleman was engaged in a discretionary police function and therefore is entitled to the protection of § 6-5-338(a), Ala.Code 1975, as well as the fourth category of State-agent immunity as articulated in Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006). Nor does Coleman lose this immunity because of his failure to satisfy all the prerequisites for parking his vehicle in a median as prescribed in § 32-5A-7. As I stated recently in L.N. v. Monroe County Board of Education, 141 So.3d 466, 473 (Ala.2013) (Murdock, J., concurring specially):
“I remain of the view that, in recent years, this Court has ‘ballooned’ the ‘beyond authority’ exception to State-agent immunity identified in Ex part Cranman, 792 So.2d 392 (Ala.2000), and Ex parte Butts, 775 So.2d 173, 178 (Ala.2000), into something that threatens to, and that taken to its logical conclusion does, swallow the rule of State-agent immunity also identified in those cases. By this reference, I incorporate herein the position I expressed as to this issue in Ex parte Watson, 37 So.3d 752, 765-66 (Ala.2009) (Murdock, J., concurring in part and dissenting in part). Furthermore, I also incorporate by this reference the analysis provided by the United States Court of Appeals for the Eleventh Circuit in Holloman v. Harland, 370 F.3d 1252 (11th Cir.2004), a case I have only recently noticed, but one that perhaps offers a more erudite explanation than have I thus far as to what that court would call the ‘untenable tautology’ created by a ‘beyond authority’ ex *761 ception to immunity that has been ‘framed’ by this Court.
“Specifically, my understanding of the purpose and nature of the ‘beyond authority’ exception in Alabama law finds a parallel in the federal law’s inquiry into whether a state official is entitled to ‘qualified immunity’ from certain federal-law claims. In Holloman, the Eleventh Circuit explained how it is that a state official might be considered to be acting within his or her authority, even in the course of violating the constitution, which of course the official ultimately is not authorized to do.”
I take this opportunity to share those portions of the Eleventh Circuit’s opinion in Holloman that I find well explain the “ ‘untenable tautology’ created by a ‘beyond authority’ exception to immunity that has been ‘framed’ by this Court.” L.N., 141 So.3d at 468 (Murdock, J., concurring specially and citing Holloman v. Harland, 370 F.3d 1252 (11th Cir.2004)). If one substitutes for the concept of violating another’s “constitutional rights” as referenced in Holloman the concept of simply violating another’s legal rights (which, of course, also may be said to be “beyond the authority” of a State employee), it readily becomes apparent that this Court’s interpretation of the “beyond authority” exception inevitably collapses the immunity determination into the determination of whether the State employee has committed a tort or any other wrong actionable under state or federal law.
The court in Holloman explained that it employed a two-part test in determining whether a government employee was entitled to qualified immunity:
“Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. See Hill v. Dekalb Reg’l Youth Det. Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) (‘A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official’s duties and within the scope of this authority.’ (emphasis added)).
“One might reasonably believe that violating someone’s constitutional rights is never a legitimate job-related function or within the scope of a government official’s authority or power. As we explained in Harbert Int’l, Inc. v. James, 157 F.3d 1271,1282 (11th Cir.1998) (quotation marks and citation omitted), however, ‘the inquiry is not whether it was within the defendant’s authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology.’ In applying each prong of this test, we look to the general nature of the defendant’s action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.
“Consider the first prong of the test— whether the official is engaged in a legitimate job-related function. In Sims v. Metropolitan Dade County, 972 F.2d 1230 (11th Cir.1992), ‘we did not ask whether it was within the defendant’s authority to suspend an employee for an improper reason; instead, we asked whether [the defendant’s] discretionary duties included the administration of discipline.’ Harbert, 157 F.3d at 1282. Similarly, in assessing whether a police *762 officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities. See, e.g., Madiwale v. Sa-vaiko, 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description.
“Of course, we must be sure not to characterize and assess the defendant’s act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly ‘furthering the public interest.’ If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official’s actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer’s duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests. See, e.g., [Lee v.] Ferraro, 284 F.3d [1188] at 1194 [(11th cir.2002)] (holding, in an excessive force suit, ‘there can be no doubt that [the police officer defendant] was acting in his discretionary capacity when he arrested [plaintiff]’).
“After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function — that is, pursuing his job-related goals — in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. See, e.g., Harlow [v. Fitzgerald ], 457 U.S. [800] at 819 & n. 34, 102 S.Ct. at 2739 & n. 34 [ (1982) ] (limiting the availability of qualified immunity to situations where ‘an official’s duties legitimately require action’ and to ‘actions within the scope of an official’s duties’). Each government employee is given only a certain ‘arsenal’ of powers with which to accomplish her goals. For example, it is not within a teacher’s official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.
“Employment by a local, county, state, or federal government is not a carte blanche invitation to push the envelope and tackle matters far beyond one’s job description or achieve one’s official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee’s job is not protected by qualified immunity.
“Under this standard, Allred — as a matter of law — was undoubtedly en *763 gaged in a discretionary function in chastising Holloman for raising his fist during the Pledge of Allegiance and later referring him to Harland for punishment. Though Allred is not empowered to violate constitutional rights as part of her official duties, she did have the responsibility of maintaining decorum in the classroom. The fact that she may have attempted to keep order in the classroom in an unconstitutional manner does not change the fact that she was fulfilling a legitimate job-related function. Moreover, the ways in which she attempted to pursue this job-related goal (chastising Holloman and reporting him to the principal) — examined on a general level rather than in this specific application — were legitimate prerogatives of her job. From an alternate perspective, putting aside Holloman’s First Amendment claim, Allred’s actions would undoubtedly be considered part of her duties and legitimate exercises of her authority. Consequently, under the two-prong test articulated above, her activities in relation to the flag salute incident were discretionary acts for which she may seek qualified immunity.”
370 F.3d at 1265-67 (final emphasis added).